Good morning, Your Honor. George Boisseau on behalf of Mr. Jenkins, and may it please the court. I would reverse the order of the issues on the brief. What I'm asking for in this case is a remand for resentencing. We contend that the district court abuses discretion by denying the defense motion to continue the sentencing and to have an evidentiary hearing. This is a case where the issue before the district court wasn't objected to by the government in the pre-sentence report. The draft came out, no objections were made to the draft pre-sentence report. The final came out, and at that point in time the parties had seven days pursuant to Judge White's standing to file sentencing memorandums. The final recommendation recommended a 37-month sentence, but with no enhancements, none of the four-level enhancements ultimately were decided by the district court. At that point in time, the government just either, I think it's either three or four days before the sentencing hearing, and late under any rule, filed the sentencing memorandum requesting a four-level enhancement. At that point in time, at defense objected, saying that we want a continuance because the party, the government has filed a late brief requesting this. Exactly how much time did defense counsel have? I believe the sentencing hearing was on a Thursday, so it was three court days. The sentencing memorandum was filed electronically. It might have been filed on a Tuesday, been received by counsel either on Tuesday or Wednesday. But you were given, sent a letter two weeks prior to sentencing informing you that the United States was going to be asking for this adjustment upward. I don't believe it. That's what's in the briefs. Counsel acknowledged receipt of the letter. That was received by... When you say counsel... Well, I was not the sentencing counsel. My colleague did the sentencing because I was in a jury trial. Okay, so if counsel acknowledged receipt, then the answer to my question is yes? I don't believe it. We did receive it. I don't believe it was two weeks beforehand. Well, that's okay. What do you believe it was? You have a letter. It's probably a week beforehand. Well, do you have the letter? What does it say? What day did you receive it? Well, actually the letter that we actually received came from the probation department. So the actual letter... You can stand here and argue that you didn't get it in a timely manner, but you cannot tell me when a letter was addressed to you what day you got it? No, I can't at this point. And that was not the date of the... Okay, but the issue really was there was no sentencing memorandum filed by the government in a timely fashion outlining their position. So as it goes to... When it went to sentencing, counsel requested, first of all, an evidentiary hearing, objected to the four-level increase, and then requested an evidentiary hearing. And the court denied all the requests, and putting counsel in a... I mean, defendant in an untenable position. Here, the issue ultimately decided by the district court was that there was preponderance of the evidence to believe that the drugs found in the car were connected to the defendant, because the underlying offense was possession of a firearm. There had been a suppression... Well, actually what the court had to determine based on this sentencing adjustment wasn't it that the use of the gun was used to embolden under these circumstances with the car and possible being drugs in the car? Absolutely, and that's what the court had to decide. But in order to decide that, the drugs had to be associated with Mr. Jenkins. And the evidence that suggested that, what came from a confidential informant, that the district court at a suppression hearing had deemed to be unreliable. Nonetheless, the case law permits the sentencing judge to consider anything, even if the motion to suppress is granted. If you look at the Bruton case, my question to you is, why didn't this, and this is the quote from the case, have some potential to embolden him to sell crack cocaine, thus justifying this four-level enhancement? All it requires is some potential. The car was open, he'd run away, the keys were in the car, there was some potential to link the gun to the sale of the drugs. Well, the issue, I mean, the issue is some potential for emboldening him. I don't deny that that's the standard, but the question is, is that the drugs actually have to be associated with Mr. Jenkins in order to give rise to that some potential to be emboldened. Based on all the circumstances, the court has determined by preponderance of the rest, it was my understanding based on all the facts in the brief, but you tell me because this is your opportunity, if this is incorrect, is that this was in a high-crime area notorious for drug dealing. Mr. Jenkins was standing with another individual next to an illegally parked car registered to Mr. Jenkins' wife. The car was unlocked and the keys were the ignition. The car contained a crack cocaine and a receipt in Mr. Jenkins with Mr. Jenkins' alias on it. And then when the police approached Mr. Jenkins, he immediately ran from the car while pulling a loaded firearm from his waistband. What part of that do you challenge and or do you say that that's just not enough? That's not enough to to associate the drugs that he was drug dealing at that point in time. There was another individual parolee that was actually arrested next to the car. Mr. Jenkins ran, the other individual didn't run. I wanted to know exactly how you were challenging that. There were actually, as it turns out, there were more than one car in that particular driveway. There were two other cars in front of the car. But who to whom was the car registered? It was Mr. Jenkins' girlfriend. But there's no, I mean the problem is is that yes, other people had access to the car that could have been using the car, could have put the drugs there. And the ultimate issue is going to turn on Mr. Jenkins' possession. Did he possess those drugs? And without, there's no admissions by him that he possessed the crack cocaine. There's no one saying that he is the person that possessed the crack cocaine. It's, yes, it's circumstances that are equally plausible. So at that point in time, what we requested is that evidentiary hearing. And the court, everyone pointed to the informant. Indeed, the informant had said that Mr. Jenkins was in possession of the drugs and where it was hidden. But that informant had been deemed be unreliable by the district court in motion, in a motion for the suppression motion. The court had decided that the informant was so unreliable that there was no probable cause to search the car after Mr. Jenkins' arrest. So if the informant information is so unreliable, and there's many reasons why it was so unreliable because of his prior history, then if it wasn't reliable for probable cause, how can it be, how can it support a preponderance of the evidence? Well, but the case law allows the court to rely on that evidence. And as you say, the district court, it was the same district court who made that determination, who's making this determination, who's in the best position to, uh, know everything about the case and decide whether or not this adjustment is, uh, is appropriate. That would have been true had the distance had the issues at time of trial involved the possession of the drugs. The district court would have been in a good position to say, I reviewed everything in this case. But the only issue at trial was the possession of the firearm. It had nothing to do with the possession of the drugs. And so you're saying the hearing, if you were to have one, would help you how? What would come to bear at the hearing? The informant will be called as a witness. The informant actually was known by the individuals. It wasn't still a confidential informant. What else? Well, the informant, you know, if the court is going to rely on the informant to determine whether or not the drugs belong to Mr. Jenkins, then the defendant would have the opportunity to cross-examine him. Couldn't the judge rely not just on the informant, but on all the circumstances surrounding that? Well, yes, the court relied on that. I'll give you two minutes for rebuttal. You're out of time now, so I'll give you two minutes for rebuttal. May it please the court. Good morning. My name is Lori Gray. Can you speak right into the mic? I can't. I tend to get loud. That's why I pushed it to the side. Well, we'll tell you if you're getting loud. The loud is good. My name is Lori Gray. I represent the United States. I'll begin with defendant's complaint about the court's denial of its continuance motion, because I want to settle the record on a couple things. First of all, the court, before ruling on defendant's request, drilled down and specifically asked defendant's counsel whether they had received notification, and this is that supplemental record 436. The court says, the question I have for you, counsel, is were you aware of the notification to Mr. Boisseau and defense counsel says, we were aware that the government was asking for a four point enhancement. The government then says that email was sent on October 20th, 2011, and that was precisely two weeks before the sentencing. The court then asked, well, was there specific statutory citation, and indeed, again, it was said that the section that the government was going to ask for the four point enhancement was in that letter. So the court made sure that there was notification, that they had the particular section, section 2K, and that they had the ability to research that as well. Defendant has failed to show any prejudice. As a matter of fact, at the time of sentencing, counsel was given the opportunity to argue and said, in anticipation of the sentence, had reviewed the suppression motion transcript, so shows not caught off guard or unaware, and then correctly pointed out that the enhancement required a showing of a nexus between the possession of the gun and the drugs, that there had to be this emboldening that you, Judge Nelson, have referred to. So defendant has failed to show anything different that they would argue should the motion have been granted. Well, your opposing counsel, Mr. Boisseau, indicated that he would have explored more regarding the informant or maybe had him testify. Right, said would have called the informant. The informant, as your honors know from looking at the record, was nowhere near the site of where this took place, and the informant the court did find was reliable with regard to, he said, defendant is going to be at this certain location in East Palo Alto and going to be driving a Dodge Charger. So the two police officers that went out to this high crime area at night, at approximately 10 p.m., when they got to the area, there was exactly the defendant driving the exact car that defendant said. It was at that point that the officers with their own eyes saw what occurred. They pulled over, they got out and said, police. At that point, defendant bolted. He was standing next to a car with the windows rolled down, the keys in the car, and off he went. The other gentleman stayed put. When the officers caught up with the defendant, he had tossed away a loaded gun with a gun in the chamber. So what they saw when they arrived was defendant standing there, loaded gun in his waistband, next to a car registered to his girlfriend or wife, with a receipt in the center console, along with over 90 grams of crack cocaine and $1,000 cash. How do you distinguish the Verdugo case? The Verdugo case, Your Honor, 44-year-old case that, in my research, has not been applied. Subsequently, in this court, and Kim talked about whether it was still good law. Verdugo, as you know, was an outrageous set of facts. The police officers had investigated the defendant for close to two or three months. They had enough information to indict him, but they went to defendant's home without a search warrant, without any exigent circumstances, for the sole purpose of collecting additional drug evidence that they could use at sentencing to jack up the sentence. That is not what we have here. These investigators were, these officers were off investigating whether or not the defendant would be at the location that the CI said. He was standing next to a car. The facts are starkly different, so there would be no incentive to suppress that evidence for consideration at sentencing, which is what the Verdugo holding was all about. Thank you. And the other thing I just want to clear up is that the standard of review for this is preponderance, whether a preponderance of the evidence showed that the gun was possessed to embolden the drug dealing. That was the standard defense counsel argued at sentencing, and in the opening brief, and for the first time in the reply brief, talks about that it should be clear and convincing. But that is not the standard should apply, and it was not plein air for the court to not apply that standard, because in this case, the enhancement was four levels. Court authority in this case, specifically the Riley case that defendant cites in his reply brief, talks about that being one of the factors if the enhancement is four levels or less. It's the preponderance standard. Another guideline to look at is whether the impact more than doubles the sentence. Again, here, the four level enhancement did not. Another reason to apply the preponderance standard. And on the merits, the evidence shows that standing next to this car with a loaded handgun and a bullet in the chamber, it's much akin to the Polanco case that the government cited in its brief, where it emboldened the defendant, certainly to protect the stash that he had in the car or collect the money for the selling of the drugs. Defendant raised another issue in his the court has any questions on that? No questions. And if there are no other questions, I will then submit and ask that you affirm. Thank you. Thank you. The government argues prejudice. We obviously the issue. The prejudice involves the lack of evidentiary hearing that that was requested by Mr Jenkins. He wanted evidentiary hearing to least bring these these issues before the court's attention. The when you do a sentencing memorandum, you request evidentiary hearing. And that was exactly what council did at sentencing, saying we need an evidentiary hearing. The court decided, Well, I've heard enough. Now there's problems with that. But to the extent I've argued that the informant issue is wrapped into that ultimate finding, whether it's preponderance of the evidence or whether it's clear and convincing evidence, it's still the informant is critical to this particular issue. And that informant was never cross-examined and confronted by Mr Jenkins and was never given an opportunity to do so. And it's a little bit, the court could look at at this council. This is part of the record because part of the, I was not trial counsel and I was not the attorney that did the suppression hearing. But we did review everything beforehand. But that's why we wanted an evidentiary hearing so this could be aired before the district court judge. So the prejudice involves the lack of evidentiary hearing. And it stems from the fact that whether or not the government gave us notice that we're going to ask for that, there was never any challenge through the regular procedures, either sentencing memorandums or objections to the pre-sentence report, that really would have fleshed out the particular issues before this court. The procedures are in place to give timely notice so those issues can be decided and briefed in a timely fashion. It's why even have rules if they can not apply the rules and not file their sentencing memorandum on time, not object to the pre-sentence report and say oh we gave you notice. That is not the way it goes. There's certain time constraints and certain requirements that the district court has set and this court has applied. So we're asking only for the opportunity to have a fair hearing in this and that's why we're asking for a remand. And I thank you for your time. Thank you very much. Thank you both for your presentations. The case is now submitted.
judges: Fletcher, Nelson, Murguia